```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


ABBOTT LABORATORIES,              )   No. 19 C 6587
                                  )
             Plaintiff,           )
                                  )
         vs.                      )   Chicago, Illinois
                                  )
GRIFOLS DIAGNOSTIC SOLUTIONS,     )
INC., GRIFOLS WORLDWIDE OPERATIONS)
LIMITED, and NOVARTIS VACCINES AND)
DIAGNOSTICS, INC.,                )
                                  )   February 28, 2024
             Defendants.          )   9:30 a.m.


                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HON. SARA L. ELLIS


APPEARANCES:

For the Plaintiff:      MR. MICHAEL A. PEARSON, JR.
                        Kirkland & Ellis LLP,
                        1301 Pennsylvania Avenue, N.W.,
                        Washington, D.C.  20004

For the Defendants:     MS. DEVON C. BEANE
                        K&L Gates LLP,
                        70 West Madison Street Suite 3300,
                        Chicago, Illinois 60602
```

PATRICK J. MULLEN
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1412
Chicago, Illinois  60604
(312) 435-5565

1        (Telephonic proceedings on the record.)
2            THE CLERK:  2019 C 6587, Abbott Laboratories versus
3   Grifols Diagnostic Solutions, Inc.
4            MR. PEARSON:  Good morning, Your Honor.  Michael
5   Pearson from Kirkland & Ellis on behalf of Abbott.
6            MS. BEANE:  Good morning, Your Honor.  Devon Beane
7   from K&L Gates on behalf on behalf of defendants Grifols and
8   Novartis.
9            THE COURT:  All right.  Give me a second.  I've got to
10  grab your motions.
11       (Brief pause.)
12           THE COURT:  All right.  So this is defendants' motion
13  to reopen discovery directed to the willful infringement.  So
14  this is a question that I have.  How does Abbott intend to rely
15  on the audit?
16           MR. PEARSON:  Your Honor, Michael Pearson from
17  Kirkland.  What we intend to do is show that we were
18  communicating with the defendants, introduce the correspondence
19  that we had with them, the letters and the phone calls that
20  happened about that, and we do not intend to put the audit at
21  issue.  We intend to rely upon our correspondence and the fact
22  that we came to the court in a declaratory judgment action for
23  defense of willfulness.
24           THE COURT:  So this is where it gets a little tricky
25  to me.  As I understand it, Abbott is going to explain to the

1    jury:  Our behavior wasn't willful because we essentially had a
2    good faith belief that the patent wasn't valid and we were not
3    willfully infringing, and you can see that because we had this
4    communication with Grifols and told them we don't believe we're
5    infringing but without saying why, which is because we did this
6    internal audit and our audit told us that.
7             It seems like the jury might be confused.
8             MR. PEARSON:  Your Honor, the letter that is
9    referenced that was sent to Grifols in May of 2019 before this
10   suit began lays out the basis for Abbott's positions regarding
11   this patent.  We can rely solely on the text of the letter that
12   was provided to Grifols as well as the correspondence with
13   Grifols.
14            I don't know that the fact that there was an audit
15   needs to come up in that unless there is a question as to
16   timing on why we sent the letter when we did.  Perhaps at that
17   point there might be a response on why the timing happened at
18   that point.
19            But this isn't merely a two-line email where Abbott
20   says we don't infringe without providing a basis for it.  It's
21   a five-page letter that was provided to Grifols laying out our
22   positions, and then there was a complaint filed laying out our
23   positions at that point in time.
24            So I think the basis can be pointed to solely in the
25   correspondence that we shared with Grifols which is not

1 privileged.

2 THE COURT: All right. What's Grifols' position?

3 MS. BEANE: Thank you, Your Honor. Our position is
4 that Abbott's reliance on the letter itself is also relying on
5 advice of counsel because, as Abbott made clear in the motion
6 for summary judgment proceedings, the conclusions that were
7 conveyed to Grifols in that letter were conclusions reached as
8 a result of the internal audit, and it should not matter that
9 Abbott chose to convey some of those conclusions in a letter to
10 Grifols.

11 I think Your Honor hit the nail on the head that if
12 the jury sees that letter but then is not able to understand
13 the context of how that came to be, that would be
14 extraordinarily confusing and, I think more importantly, allows
15 Abbott to use the benefit of the internal audit in a way that
16 suits its needs but allows it to also shield potentially
17 contrary views or negative opinions that were also reached at
18 the same time but were not conveyed to Grifols because, of
19 course, you would not convey those types of opinions in a
20 letter where you're trying to convince the other side that you
21 should not have to pay under the license anymore.

22 So in our view it is a disclosure of a privileged
23 communication by Abbott actually sending the letter laying out
24 its positions, and it would not be fair to allow them to rely
25 on those positions without also disclosing that there were

1    potentially contrary views.
2            MR. PEARSON:  May I respond, Your Honor?
3            THE COURT:  You may.
4            MR. PEARSON:  All right.  What I hear from defendants'
5    counsel is an argument that it somehow would be confusing to
6    have just the letter provided and that there was somehow a
7    waiver of privilege for reliance on advice of counsel from a
8    letter that was sent before this litigation was ever filed.
9            There hasn't been any waiver of privilege regarding
10   any of the internal privileged analysis that was held by Abbott
11   and has not been put at issue in this case.  In fact, Abbott in
12   Grifols' own briefing made clear that we did claim privilege
13   over these issues when they were raised.
14           If there is a challenge to a particular portion of the
15   letter or a particular way that the fact that we communicated
16   with Grifols before this case began is something that the Court
17   believes needs to be either redacted or somehow not presented
18   to the jury -- sorry -- that's a separate issue from what I
19   understand the defendants to be moving for, which is a finding
20   that Abbott has waived privilege by relying upon for its
21   defense communications that by their nature could not be
22   privileged.
23           THE COURT:  Well, but I think, though, what we are
24   getting at is the basis.  So it's the basis for Abbott's belief
25   that the patent was invalid, right?

1     MR. PEARSON:  Well, Your Honor, so the letter laid out
2  a non-infringement position and said if the terms were going to
3  be -- if the claims were going to be construed more broadly,
4  then they would be invalid.  It's frankly the same rationale as
5  filing a complaint, which would not lead to a waiver of any of
6  the analysis that was done before a complaint was filed.
7     The other point I'd like to make, Your Honor, is if
8  this is handled as an issue of insuring there is not jury
9  prejudice, then I think frankly it's something that can be
10 addressed at the motion in limine stage if there's something
11 introduced at that point in time saying that there is a waiver
12 of privilege because Abbott has relied upon since its very
13 earliest non-infringement contentions in this case
14 communications that could not have been privileged because they
15 were between Abbott and Grifols.  We do not believe that that
16 is a waiver of privilege.
17    MS. BEANE:  Your Honor, this is Devon Beane again, if
18 I can respond to that point.
19    THE COURT:  Sure, go ahead.
20    MS. BEANE:  The question is not an issue of waiving
21 privilege by virtue of sending the letter.  The question is if
22 Abbott is relying on advice of counsel to rebut willful
23 infringement.  By relying on a letter that conveys internal
24 audit conclusions regarding not only non-infringement but also
25 issues related to patent-eligible subject matter and

1 obviousness type double-patenting that are unrelated to whether
2 or not Abbott infringes, they are absolutely putting into
3 question in this case Abbott's belief regarding its views and
4 trying to use a letter written by an attorney to have the
5 authority or gravitas of an opinion without the negative
6 consequences of doing so.
7 It's not simply a matter, I think, of jury confusion,
8 but it's a matter of whether or not Abbott should be able to
9 rely on these conclusions from the audit without actually
10 conveying what is necessary under the rules to assess the
11 appropriateness or actual belief in those opinions.
12 MR. PEARSON: Your Honor, this is Michael Pearson.
13 This isn't an advice of counsel defense. We don't have a
14 privileged opinion of counsel that Abbott has said: We are
15 waiving privilege over this so we can rely upon the contents of
16 that privileged advice of counsel for our defense in this case.
17 We're relying upon information that is not privileged
18 because of how it was or was not communicated, and if there's
19 certain information that was never privileged that the Court
20 finds that we cannot rely upon for our willfulness defense,
21 then that is what I would say an evidentiary issue that should
22 be addressed in a motion in limine. But instead what we have
23 is an argument that by relying upon non-privileged
24 communications Abbott has waived privilege over communications
25 that it had internally that it has not elected to waive

1  privilege on and --
2       THE COURT: So I guess, though, what would you -- what
3  is your response, Mr. Pearson, though, on defendants' framing
4  this as an advice of counsel defense kind of dressed up in a
5  different way?
6       MR. PEARSON: Well --
7       THE COURT: Well, let me just finish the thought, and
8  then you can respond. This is the same thought that I had as
9  well. You know, I'm going back and looking at this letter
10 again. It's that if the audit laid out reasons why the patent
11 was invalid and that Abbott should terminate the license, and
12 that advice came from its attorney, and then Abbott relies on
13 the findings in the audit to say to the defendant "we're going
14 to terminate the license," I guess I'm struggling to see why
15 that is not a reliance on the advice of counsel.
16      MR. PEARSON: Well, Your Honor, this is back to my
17 point about the filing of the complaint. There is counsel
18 discussions that are privileged before decisions are taken by a
19 party all the time, and the fact that a complaint is filed in a
20 case is not a waiver of privilege regarding any legal analysis
21 that was done before the complaint was lodged.
22      What waives privilege over the legal analysis is a
23 party, usually a party accused of patent infringement in this
24 case, that is affirmatively relying upon that privileged
25 advice. They say they want to come to the jury and say: We

1  have here a confidential privileged advice of counsel document.
2  We are relying upon that to show the jury that this is evidence
3  of our mindset at this point in time.  We had this privileged
4  communication that was confidential to us, not shared at all,
5  which is why we kept it as privileged, but we are now waiving
6  it to prove our mindset as of this point in time.
7           Correspondence with another party, if Grifols wants to
8  challenge whether the correspondence actually shows Abbott's
9  mindset because it's just what Abbott has told to Grifols, then
10 they can do that if that's what they'd like to do.  They could
11 also challenge why we filed this lawsuit.  But neither of those
12 points is the same thing as saying that there is confidential
13 advice of counsel that a party accused of infringement has
14 affirmatively elected to rely upon.
15          We have definitively not offered the contents of any
16 privileged communication as part of a defense to willfulness in
17 this case.  We have relied upon the circumstantial evidence of
18 our correspondence with Grifols, and if there is some portion
19 of that correspondence that needs to not be presented to the
20 jury for any number of reasons, including it does refer to
21 defenses, for example, that Your Honor has ruled upon and will
22 not be presented to the jury, if those need to be redacted or
23 not be the substance of testimony, then those are all rulings
24 that make sense to address at an evidentiary stage or even as a
25 motion in limine, if they want to have that happen.

1  But the idea that the fact that we corresponded with
2  Grifols to try to work out this issue before this case was
3  filed is somehow a waiver of our attorney-client privilege I
4  think goes well beyond the purpose of the advice of counsel
5  defense as well as frankly is trying to argue an inadvertent
6  waiver of privilege by Abbott, which is not the way that the
7  doctrine typically works.
8  THE COURT: All right. So what would Grifols'
9  position be if I were to say then that I'm going to take Abbott
10 at their word, that they would not be allowed to mention the
11 audit at trial, that they would be limited to only basing their
12 willfulness defense on the fact that they filed this lawsuit
13 seeking declaratory judgment, and that they communicated with
14 Grifols prior to filing the lawsuit, so that they would be
15 limited to those facts as I see it now to support their
16 defense.
17 MS. BEANE: Just so I understand, Your Honor, you're
18 saying that Abbott at trial would only be able to say, for
19 example, they filed this complaint seeking relief and prior to
20 doing so they communicated with Grifols but would not be able
21 to speak to the substance of what that communication entailed?
22 THE COURT: Yes.
23 MS. BEANE: I think in that sense I would agree that
24 then Abbott would not be relying on so-called advice of
25 counsel. I think to your point, to the extent they get into

1    the contents of the letter, it's advice of counsel dressed up
2    in a new way.  So under your terms, I think that there would
3    not be an issue.  But then again, to the extent more than that
4    is permitted, we would argue that it veers into advice of
5    counsel.
6              THE COURT:  And would Abbott be willing to live under
7    those rules?
8              MR. PEARSON:  Your Honor, if that's what the Court
9    rules, then we could live under that.  We do think that what we
10   communicated to Grifols in the context of the letter without
11   stating where any of that analysis came from would be fair
12   game.  We also think, separate from this issue, the fact that
13   there have been multiple claims invalidated already in this
14   case could also be fair game.  But I understand what your court
15   is saying -- what Your Honor is saying, my apologies, and we
16   can live with that ruling if that's what the Court rules.
17             THE COURT:  Okay.  Then that's what I'm going to do.
18   So as just a general parameter, you know, as we get closer to
19   trial, you know, obviously if there are things that you want me
20   to look at or think about, this would be the general
21   parameters, that Abbott is limited to the fact that it filed a
22   lawsuit and that it communicated with Grifols prior to doing
23   so.
24             MR. PEARSON:  Your Honor --
25             THE COURT:  All right.

1            MR. PEARSON: Sorry. May I ask a clarifying question?
2            THE COURT: Yes. Go ahead.
3            MR. PEARSON: Thank you, Your Honor. As I understand
4 your ruling as being with respect to the letter and the filing
5 of the complaint, would Abbott also be allowed to say that
6 there have been claims invalidated in this case, or is that
7 outside the scope of what Your Honor is ruling right now and we
8 can address that at a later time?
9            THE COURT: Yes, let's address that at a later time --
10           MR. PEARSON: Thank you, Your Honor.
11           THE COURT: -- because I haven't really thought about
12 that.
13           So you had your settlement conference at the end of
14 January. It didn't settle, so at this point where are we?
15           MR. PEARSON: Your Honor, Michael Pearson again. I
16 traded some emails with Ms. Beane yesterday outlining potential
17 schedule concepts. I think now that we have your ruling on the
18 motion to reopen discovery, what might make sense is for the
19 parties to submit a status report in two weeks with a proposed
20 schedule for what still needs to be done with the case and then
21 have -- provide a suggestion for when we think the case might
22 be trial ready.
23           THE COURT: Okay. That works for me. So if you can
24 get me a status report in 14 days --
25           THE CLERK: That date is March the 13th.

1     THE COURT: -- then I will see you back the 28th of
2  March at 9:30.
3     MS. BEANE: Thank you, Your Honor.
4     MR. PEARSON: Thank you, Your Honor.
5     THE CLERK: Judge, that's a Thursday.
6     THE COURT: Oh, sorry. The 28th will be at 1:30.
7  Sorry about that.
8     MR. PEARSON: Thank you, Your Honor.
9     THE COURT: All right. Thank you.
10     MS. BEANE: Thank you.
11     (Proceedings concluded.)
12                C E R T I F I C A T E
13     I, Patrick J. Mullen, do hereby certify that the
14  foregoing is a complete, true, and accurate transcript of the
15  proceedings had in the above-entitled case before the Honorable
16  SARA L. ELLIS, one of the judges of said Court, at Chicago,
17  Illinois, on February 28, 2024.
18
19                              */s/ Patrick J. Mullen*
                                Official Court Reporter
20                              United States District Court
                                Northern District of Illinois
21                              Eastern Division
22
23
24
25